UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

MARICHU SUAREZ BAOANAN,

                    Plaintiff,

     -Against-

LAURO LIBOON BAJA, JR., NORMA CASTRO
BAJA, MARIA ELIZABETH BAJA FACUNDO,
and LABAIRE INTERNATIONAL TRAVEL, INC.,

                    Defendants.

------------------------------------------------------------- x

DOCKET No. **08-CV-5692**

MOTION TO DISMISS

## **MOTION TO DISMISS**

Defendants Lauro Liboon Baja, Jr., Norma Castro Baja, Maria Elizabeth Baja Facundo

and Labaire International Travel, Inc. move to dismiss the complaint under Federal Rule of Civil

Procedure 12 (b) (1), (2) and (6).

Defendants Lauro Liboon Baja, Jr., Norma Castro Baja and Maria Elizabeth Baja

Facundo (hereinafter Bajas) move to dismiss the complaint upon the ground that are

diplomatically immune from civil, criminal and administrative suits in all courts of the United

States and its states under the provisions of the Vienna Convention on Diplomatic Relations

(VCDR) and 22 U.S.C. § 254 (d).

Defendants Bajas submit that under Article 31 (1) of the Vienna Convention, as upheld in

a long line of decisions, notably *Tabion v. Mufti*, 73 F.3d 525 (4th Cir.1996) and by this Court's

own decision in *Ahmed v. Hoque*, **Not reported, F.Supp.2d 2002,WL 1964806 (S.D.N.Y.)**

the Court has no jurisdiction over the subject matter of this action.

Alternatively, assuming that the defense of lack of jurisdiction fails, the Complaint fails

to state a claim upon which relief may be granted.

The motion is based on the pleadings and papers on file in this action, this motion and whatever evidence and arguments are presented at the hearing of this motion.

Defendantns will file a separate Memorandum of Point and Authorities in Support of its Motion to Dismiss Complaint for failure to state a claim upon which relief may be granted under Federal Rules of Procedure 12 (b) (6)

Dated: New York, New York
July 15, 2008.

PRADO & TUY, LLP
Attorneys for Defendants
11 Hanover Square, 26th Floor
New York, New York 1005
(212) 668 8888
By:

_Salvador Tuy_
Salvador E. Tuy, Jr. (ST1130)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X    DOCKET No. **08-CV-5692**

MARICHU SUAREZ BAOANAN,

                      Plaintiff,                MOTION TO QUASH  SERVICE OF
                                          SUMMONS and DISMISS
     -Against-                           COMPLAINT

LAURO LIBOON BAJA, JR., NORMA CASTRO    Memorandum of Points and
BAJA, MARIA ELIZABETH BAJA FACUNDO, and    Authorities
LABAIRE INTERNATIONAL TRAVEL, INC.,

                    Defendants.

------------------------------------------------------------

## MOTION TO DISMISS

Defendants Lauro Liboon Baja, Jr., Norma Castro Baja, Maria Elizabeth Baja Facundo and

Labaire International Travel, Inc.,  through counsel, to the Honorable Court, respectfully move to

quash service of process and dismiss this Complaint and to pursuant to Rule 12 (b) (1) of the Federal

Rules of Civil Procedure upon the ground that defendants Bajas are diplomatically immune from

criminal, civil and administrative suits from all courts of the United States and its states under the

provisions of the Vienna Convention on Diplomatic Relations (VCDR) and 22 U.S.C. § 254(d).

Defendants submit that the Court has no jurisdiction over the subject matter of this case by

express provision of Article 31 (1) of the Vienna Convention, as upheld in a long line of decisions,

notably *Tabion v. Mufti*, 73 F.3d 525 (4th Cir.1996) and by this Court's own decision in *Ahmed v.*

*Hoque*, **Not reported, F.Supp.2d 2002,WL 1964806 (S.D.N.Y.) .**

PRELIMINARY STATEMENT

This action was brought by Marichu Suarez Baoanan (Baoanan) against defendants Lauro Liboon Baja (Lauro Baja), Norma Castro Baja (Norma Baja), Maria Elizabeth Baja Facundo (Beth Facundo) and LaBaire International Travel, Inc. (Labaire). Plaintiff alleges in par 35. she "was a domestic worker of defendant Bajas at Defendants home located at, upon information or belief, 15 East 66th Street, New York, NY 10005". Plaintiff then alleges 15 causes of action against the Bajas and Labaire: First Cause of Action: Forced Labor under 18 U.S.C. 1589, 1595; Second Cause of Action: Trafficking with Respect to Peonage, Slavery, Involuntary Servitude, or Forced Labor under U.S.C. 1590, 1595; Third , Slavery, Peonage and Involuntary Servitude under U.S. Constitution Amendment XIII, 18 U.S.C. 1581 and 1584, 42 U.S.C. § 1994; Fourth, Unlawful Conduct with Respect to Documents in Furtherance of Trafficking, Peonage, Slavery, Involuntary Servitude or Forced Labor under U.S.C. 1592, Fifth, Racketeer Influenced and Corrupt Organization (RICO) Act under 18 U.S.C. § 1962; Sixth, Alien Tort Claims Act; Alien Tort Claims Act (28 U.S.C. § 1350); Seventh Cause of Action for Federal Minimum Wage Violation; Eight Cause of Action for State Minimum Wage Violation; Ninth Cause of Action for Unlawful Deductions from Wages; Tenth Cause of Action for State Overtime Violation and Eleventh Cause of Action for Spread of Hours Violation.

## **FACTS NOT IN DISPUTE**

1.      At all times material to this action, Defendant Lauro Liboon Baja, Jr., ("Lauro Baja) was the Chief of Mission of the Permanent Mission of the Republic of the Philippines to the United Nations. He presented his credentials to the Secretary General of the United Nations on May 21, 2003, and served until the year 2007 (printout attached as Exhibit "A"). A "Google search" (printout

attached as Exhibit "B") of the name "lauro baja" shows as the first two hits, the website of the Permanent Mission of the Republic of the Philippines to the United Nations with the profile of Defendant Lauro Liboon Baja, Jr. (printout attached as Exhibit "C").

2.    The second hit of the Google search shows the item on *Wikipedia* (free online web encyclopedia) which gives a brief profile of Lauro L. Baja, Jr., who "was the Permanent Representative to the United Nations for the Republic of the Philippines, and a former Undersecretary of Foreign Affairs."

3.    The complaint fails to mention that defendant Lauro Baja was the Permanent Representative to the United Nations for the Republic of the Philippines; he is a "diplomatic agent" as that phrase is defined under the Vienna Convention. Defendants request the Court to take judicial notice of this fact.

4.    As stated in the complaint the acts complained of happened between January 13, 2006 to April 13, 2006, while defendant Lauro Baja was the incumbent Permanent Representative to the United Nations for the Republic of the Philippines and Head of the Philippine Mission located at 15 East 66th Street and as such enjoyed diplomatic immunity for all civil, criminal and administrative acts, under the Vienna Convention. This is not to say that defendants seek umbrage under this immunity so as to concede the veracity of the alleged causes of action of plaintiff.

5.    Defendants likewise request that the Court take judicial notice that *15 East 66th Street, New York, NY 10065* is recognized as the official residence of the Philippine Chief of Mission to the United Nations; and is therefore considered inviolable under the provisions of the Vienna Convention. (Article 30).

3

6.      The Complaint alleges that plaintiff was hired as a domestic worker (pars 1,9,14 and 35 ) in the household of defendants Bajas located 15 East 66th Street, New York, New York . Under Article 37 (4) of the Vienna Convention plaintiff is considered a "private servant of members of the mission". Because of this provision, by law, Plaintiff is not covered by all Federal and State laws with regard to employment, social security and taxes. Plaintiff 's employment is considered subject to laws of the Philippine government but not US laws or New York State laws.  Article 37, (4), V.C.D.R.

7.      As a "private servant of members of the mission", plaintiff's employment is not subject to compliance of any and all laws relating to employment , be it federal or state and any penal law enforcing such employment law. Therefore defendants Bajas cannot be charged with such violations and all causes of action arising from violations of federal and state laws relating to employment in the Complaint such as the 7th Cause of Action for Federal Minimum Wage Violation; 8th Cause of Action for State Minimum Wage Violation; 9th Cause of Action for Unlawful Deductions from Wages; 10th Cause of Action for State Overtime Violation and 11th Cause of Action for Spread of Hours Violation.

8.      The alleged acts and omissions stated in the Complaint are connected with or incidental to plaintiff's employment as a domestic worker in the household of the  Head of the Philippine Mission which is located at 15 East 66th Street, New York, New York.

9.      The Vienna Convention on Diplomatic Relations (Apr. 18, 1961, [1972] 23 U. S. T. 3227, T. I. A. S. No. 7502) was ratified by the President of the United States of America on November 8, 1972 after advise from the Senate of the United States of America on September 14, 1965. Said convention entered into force with respect to the United States of America on December

4

13, 1972.

10.    The applicability of the immunity provisions of the Vienna Convention accorded to diplomats and their household has been affirmed in the United States judicially in a long line of cases, the most recent one being *Ahmed v. Hoque*, **Not reported, F.Supp.2d 2002,WL 1964806 (S.D.N.Y.)** .

11.    These decisions are known to plaintiff's attorneys and they are required to know them under Rule 11 of the Federal Rules of Civil Procedure. The skillful omission by plaintiff in her complaint of these vital facts regarding defendant Lauro Baja's status as a diplomat and his household as well as to the place of occurrence being in the Philippine Mission constitutes a material deception to this court and demonstrates lack of candor in total violation of professional ethics.

12.    Under the provisions of the Vienna Convention, defendants Lauro Baja, Norma Baja and Maria Elizabeth Baja Facundo are part of the diplomat's household and therefore immune from suit, criminal or civil during the incumbency of Lauro Baja as head of the Philippine Mission. That immunity survives up to the present time. Article 37, VCDR, states:

*(1) "The members of the family of a diplomatic agent forming part of his household shall, if they are not nationals of the receiving State, enjoy the privileges and immunities of Articles 29 to 36."*

13.    Plaintiff and her attorneys are in bad faith in filing this action knowing fully well that the immunities granted to defendants Bajas would result in the dismissal of this Complaint under the immunity provisions accorded to defendants Bajas under the Vienna Convention and the UN Headquarters Agreement.

5

14.     Plaintiff and her attorneys are in bad faith in filing this action knowing fully well there is cant possibility that the courts will modify or reverse their holdings in *Tabion v. Mufti* and *Ahmed v. Hoque*, among others, upholding the diplomatic immunity of diplomats assigned to the United Nations which decisions by reason of being a lawyer are well known to plaintiff's attorneys.

15.     On or about July 9, 2008 at 1:00 P.M. at the office of plaintiff's counsel at 99 Hudson Street, 14th Floor, plaintiff and her attorneys conducted a press conference presenting plaintiff as an abused and trafficked victim for the sole purpose of gaining media mileage for this case. In the twinkling of an eye, through the use of television, radio and the internet defendants Bajas were paraded all over the world as human traffickers and criminals. Defendants will present to this court copies of video presentation, You Tube presentations and other tri-media devices used by plaintiff and her attorneys supposedly to dramatize their Crusade against human trafficking brandishing and    using defendant Lauro Baja's image as a "poster boy" for an alleged campaign against abuses committed by diplomats.

16.     In that press conference, attorneys for plaintiff Ivy O. Suriyopas and Aaron Mendelsohn acknowledged that defendant Lauro Baja was the former Philippine Ambassador to the UN at the time these complained acts were committed. Both Suriyopas and Mendelsohn as lawyers know and had reason to know that the case would have no standing and would be dismissed on jurisdictional grounds in the light of *Tabion v. Mufti*, 73 F.3d 535, and *Ahmed v. Hoque*, with facts similar to this case. In Tabion, for example Corazon Tabion, a Philippine national, performed domestic services in the Muftis' Virginia home for more than two years. Believing that her low pay and long hours violated the Fair

6

Labor Standards Act (FLSA), 29 U.S.C. Sec. 201 et seq., Tabion sued the couple in federal district court. She stated numerous complaints arising from the employment relationship, including breach of contract, intentional misrepresentations in employment, false imprisonment, violations of 42 U.S.C. Secs. 1981 and 1985(3), and FLSA infractions. Tabion sought compensatory damages, punitive damages, attorney's fees and costs. After a hearing, the district court judge found the Muftis protected by diplomatic immunity and quashed their service of process.

17.    In this case plaintiff pleads similar causes of action in 7th Cause of action for Federal Minimum Wage Violation; 8th Cause of Action for State Minimum Wage Violation, 9th Cause of Action for Unlawful Deductions from Wages; 10th Cause of Action for State Overtime Violations and 11th Cause of Action for Spread Hours Violation. In addition these pretended causes of action are also barred by the FSIA .

18.    The use, rather the abuse, of this litigation to promote an agenda, no matter how noble the cause maybe, to propagandize that cause at the expense of defendants,  goes beyond the limits of fair advocacy and violates Rule 11 (b) (1) that it is not [resented for an improper cause and (2) that the claims and legal contentions ***"are warranted by existing law or by a nonfrivolous argument for the extension, modification or reversal of existing law or the establishment of a new law."***

19.    Plaintiff and her attorneys are guilty of bad faith and defendants invite this court for a sua sponte analysis for the applicability of the sanctions under Rule 11.  In the alternative, defendants reserve the right to file a Rule 11 motion for sanction.

7

## DISCUSSION

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§ 1351, which states that district courts "have original jurisdiction, exclusive of the courts of the

States, of all civil actions and proceedings against . . . members of a mission or members of their

families (as such terms are defined in section 2 of the Diplomatic Relations Act)." 28 U.S.C.

§ 1351; see also Logan v. Dupuis, 990 F. Supp. 26, 27 n.2 (D.D.C. 1997).

The Vienna Convention on Diplomatic Relations provides in relevant part that a

"diplomatic agent shall . . . enjoy immunity from [the receiving state's] civil and administrative

jurisdiction . . . ." VCDR, Article 31(1). The Vienna Convention also provides that the

"members of the family of a diplomatic agent forming part of his household shall, if they are not

nationals of the receiving State, enjoy the privileges and immunities specified in Articles 29 to

36." VCDR, Article 37. Finally, the VCDR provides that a diplomatic agent "shall not in the

receiving State practice for personal profit any professional or commercial activity." VCDR,

Article 42.

Article 39 (2) also provides...."However, with respect to acts performed by such a person

(diplomatic agent) in the exercise of his functions as a member of the mission. Immunity shall

continue." This is to forestall the question of the applicability of defendants' immunity at present

even though defendant Baja has retired from his position.

In accordance with the treaty, 22 U.S.C. § 254d provides that "[a]ny action or proceeding

brought against an individual who is entitled to immunity with respect to such action or

proceeding under the Vienna Convention on Diplomatic Relations . . . shall be dismissed. Such

8

immunity may be established upon motion or suggestion by or on behalf of the individual . . . ." 22 U.S.C. § 254d. As the defendants have moved to dismiss on the grounds of diplomatic immunity, the only question before the Court is whether defendants are immune under the terms of the Vienna Convention, or whether, they are excepted from immunity under Article 31(1) ( c) thereof. If the Court concludes that defendants are immune, it must dismiss the action pursuant to 22 U.S.C. § 254d.

The Vienna Convention on Diplomatic Relations is a multilateral treaty. "Treaties are contracts between sovereigns, and as such, should be construed to give effect to the intent of the signatories."*Tabion v. Mufti*, 73 F.3d at 537 (citing United States v. Stuart, 489 U.S. 353, 365-66 (1989) and *Nielsen v. Johnson*, 279 U.S. 47, 51 (1929)). When construing a treaty, the Court should look at the treaty's language, considering the context in which the words were used. See *Tabion v. Mufti*, 73 F.3d at 537 (citing Eastern Airlines, Inc. v. Floyd, 499 U.S. 530, 534 (1991)). As Judge Oberdorfer has explained, a "treaty is to be interpreted 'in accordance with the ordinary meaning to be given to the terms of the treaty in their context and in light of its object and purpose.'"*Logan v. Dupuis*, 990 F. Supp. at 29 (citing the Vienna Convention on the Law of Treaties, art. 31(1), May 23, 1969, 1155 U.N.T.S. 331). "Treaties generally are liberally construed: courts 'may look beyond the written words to the history of the treaty, the negotiations, and the practical construction adopted by the parties' to ascertain the meaning of a difficult or unclear passage." *Tabion v. Mufti*, 73 F.3d at 537 (quoting Eastern Airlines, Inc. v. Floyd, 499 U.S. at 535 and citing Nielsen v. Johnson, 279 U.S. at 51-52); see also *Tachiona v United States*, 386 F.3d 205, 217 (2d Cir. 2004), cert. denied, 126 S.Ct. 2020 (2006).

9

Article 1(e) of the Convention defines a diplomatic agent as "the head of the mission or a member of the diplomatic staff of the mission." It is clear from the definition that Defendant Lauro Baja is a "diplomatic agent" as defined by the convention. As such diplomatic agent, Lauro Baja is immune from the civil, criminal and administrative jurisdiction of the receiving state (the United States of America). Defendants Norma Catro Baja (Norma Baja) who is the wife of the ambassador and Maria Elizabeth Baja Facundo (Beth Facundo) who is the daughter of the ambassador living in the same household (as admitted in the complaint, par.12, page 3) are also immune from civil and criminal liability under the same Article 37 of the Vienna Convention which states that

> "(1) The members of the family of a diplomatic agent forming part of
>
> his household staff , if they are not nationals of the receiving State,
>
> enjoy the privileges and immunities specified in articles 29 to 36."

Article 31 provides that Defendant Lauro Baja is immune from the jurisdiction of this Court, except in cases involving subsections (a), (b) and ( c ). None of the acts stated in the complaint constitute any instance where such exceptions apply. This court has no jurisdiction over subject matter of the action by express provision of the Vienna Convention. The exceptions are:

1. real actions involving immovable property  [Article 31 (a)], an action relating to succession [Article 31 (b)], or

2. when the actions relates to "commercial activity exercised by the diplomatic agent in the receiving State outside his official functions [Article 31 ( c )].

This action does not involve immovable property nor is it an action relating to succession. The only possible basis for jurisdiction would be if there were a finding by the Court that the hiring of a domestic worker can be considered "commercial activity". In the case of *Kato v. Ishihara* (360

F.3d 106, February 18, 2004), the Court of Appeals for the Second Circuit had occasion to construe the term "commercial activity", which is the same exception found in the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq.* In that case, the Second Circuit held "that an agency of a foreign government is not involved in "commercial activity" under the FSIA when it provides general business development assistance, including product promotion, to business enterprises of that country seeking to engage in commerce in the United States."

Following the lead of the Second Circuit, the District Court for the Eastern District of Virginia, in the case of *James Crum v. Kingdom of Saudi Arabia and Royal Embassy of Saudi Arabia* (No. 05-275, July 13, 2005), held that "An embassy's decision to hire a limousine driver to transport embassy officials, their families and guests, and meet its everyday needs does not amount to engaging in "trade and traffic or commerce."

It further held that "The Court holds that it is without jurisdiction to hear this claim of employment discrimination because hiring a driver does not constitute "commercial activity" within the meaning of the Foreign Sovereign Immunities Act. The court also holds that it lacks jurisdiction to hear Mr. Crum's claim because exercising jurisdiction in this case would violate the Vienna Convention on Diplomatic Relations."

The Fourth Circuit Court of Appeals in the case of *Tabion v. Mufti* (73 F.3d 535), the facts of which are as follows:

> "Corazon Tabion, a *Philippine national*, performed domestic services in the Muftis' Virginia home for more than two years. Believing that her low pay and long hours violated the Fair Labor Standards Act (FLSA), 29 U.S.C. Sec. 201 et seq., Tabion sued the couple in federal district court. She stated numerous complaints arising from the employment relationship, including breach of contract, intentional

11

misrepresentations in employment, false imprisonment, violations of 42 U.S.C. Secs. 1981 and 1985(3), and FLSA infractions. Tabion sought compensatory damages, punitive damages, attorney's fees and costs."

"After a hearing, the district court judge found the Muftis protected by diplomatic immunity and quashed their service of process. The judge determined that the phrase "commercial activity" as used in one of the three exceptions to civil immunity enumerated in Article 31 of the Vienna Convention did not cover the Muftis' employment relationship with Tabion. The judge therefore ruled the suit barred by the Vienna Convention. Tabion has appealed, challenging the court's interpretation and conclusion by arguing that her domestic service for the Muftis amounted to commercial activity exercised outside the Muftis' official functions."

Tabion appealed to the Fourth Circuit, which affirmed the district court's judgment. In affirming, the Fourth Circuit held that: xxx the phrase "commercial activity," as it appears in the Article 31(1)( c ) exception, was intended by the signatories (to the Vienna Convention) to mean "commercial activity exercised by the diplomatic agent in the receiving State outside his official functions. Day-to-day living services such as dry cleaning or domestic help were not meant to be treated as outside a diplomat's official functions. Because these services are incidental to daily life, diplomats are to be immune from disputes arising out of them."

And in *Ahmed v. Hoque*, Not reported, F.Supp.2d 2002, WL 1964806 (S.D.N.Y.), the plaintiff a former domestic servant in the home of the defendants AHM Sadiqul Hoque, Economic Minister for the Permanent Mission of Bangladesh to the United Nations  and Sabiha Hoque, wife,  brings this action alleging that the  defendants forced him to work fourteen to seventeen hour workdays, seven days a week, gave him only occasional spending money but no salary, verbally and physically abused him, and refused him access to his travel documents, in violation

12

of the U.S. Constitution and federal statutes, New York State labor laws, international law

treaties, conventions, and the customary law of nations, as well as the common law. The

defendants have defaulted. Nonetheless, they claim that they enjoy diplomatic immunity from

this suit, that a default judgment cannot be entered against them, and as such that this action must

be dismissed. The Government of the United States agrees. For the reasons that follow, this

action is dismissed."

I.    *Ambassador and Mrs. Baja and their daughter Maria Beth Baja Facundo*
      *Have Immunity from this Action.*

As Head of the Philippine Mission and Permanent Representative to the United Nations

at that time, defendant Lauro Baja, his wife Norma Baja and their daughter Maria Elizabeth Baja

Facundo are entitled to full diplomatic immunity under the immunities provided by the Vienna

Convention and the treaties under the United Nations Charter, 59 Stat. 1031 (1945) known as the

UN Charter, the Headquarters Agreement. The Convention on the Privileges and immunities of

the United Nations, and the Vienna Convention. These treaties have the force of law. *United*

*States v. Palestine Liberation Organization,* 695 F. Supp.1456, 1464, (S.D.N.Y. 1988) citing

U.S. Const. Art VI, cl2.

Article 105(2) of the UN Charter provides that "Representatives of the Members of the

United Nations . . . shall enjoy such privileges and immunities, as are necessary for the

independent exercise of their functions in connection with the Organizations." Id.

Headquarters Agreement, include the following provision:

> [Representatives of Member States] shall, whether
> residing inside or outside the headquarters district, be

13

> entitled in the territory of the United States to the
> same privileges and immunities, subject to corresponding
> conditions and obligations, as [the United States]
> accords to diplomatic envoys accredited to it.
> (Art. V, sec. 15)

Article IV, section 11 of the General Convention provides:

> Representatives of Members to the principal and
> subsidiary organs of the United Nations . . . shall,
> while exercising their functions and during their
> journey to and from the place of meeting, enjoy the
> following privileges and immunities:
> (a) immunity from personal arrest or detention
> and from seizure of their personal baggage . . .;
> (b) inviolability for all papers and
> documents;
> * * *
>
> (g) such other privileges, immunities and  facilities not
> inconsistent with the foregoing
> as diplomatic envoys enjoy . . . .Id.

Under both the Headquarters Agreement and the General Convention, representatives to

the United Nations are entitled to those privileges and immunities accorded by the United States

to diplomats accredited to the United States. [See _767 Third Avenue Associates v. Permanent_

_Mission of the Republic of Zaire_,988 F.2d 295, 299-300 (2d Cir.), cert. denied, 510 U.S. 819

(1993). The customary international law on diplomatic privileges and immunities has

since been codified in the Vienna Convention, which was opened for  signature in 1961, and

which entered into force for the United States in December 1972.₅ Id. at 300.

Article 31 of the Vienna Convention provides in relevant part:

> 1.     A diplomatic agent shall enjoy immunity from the criminal
> jurisdiction of the receiving State. He shall also enjoy immunity

from its civil and administrative jurisdiction, except in the case of:

...

(c) an action relating to any professional or commercial activity exercised by the diplomatic agent in the receiving State outside his official functions.

2.     A diplomatic agent is not obliged to give evidence as a witness.

Article 37 of the Vienna Convention provides in relevant part:

1.     The members of the family of a diplomatic agent forming part of his household shall, if they are not nationals of the receiving State, enjoy the privileges and immunities  specified in Articles 29 to 36 ..


II     ***Immunity Under the Headquarters Agreement***

The Headquarters Agreement became operative in 1947. S.J. Res. 144, 61 Stat. 756. This agreement establishes the seat of the United Nations in New York City and regulates the relationship between the United States and the United Nations. "With the United States as the site of the United Nations headquarters, our Government was particularly sensitive to the problem of assuring the independence and proper functioning of the United Nations, and also to the protection of its own security. The Headquarters Agreement was one of the means adopted to protect the respective interests." *U.S. ex rel. Casanova v. Fitzpatrick,* 214 F.Supp. 425, 431-32 (S.D.N.Y.1963); *see alsoKlinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria,* 937 F.2d 44, 51 (2d Cir.1991).

The immunity provision in the Headquarters Agreement at issue here is contained in Article V, Section 15, which provides as follows:

1) *Every person designated by a Member* as the principal resident representative to the United Nations of such Member or as a resident representative with the rank of ambassador or minister

15

plenipotentiary

> 2) such resident members of their staffs as may be agreed upon between the Secretary-General, the Government of the United States and the Government of the Member concerned,

> ...*shall, whether residing inside or outside the headquarters district, be entitled* in the territory of the United States *to the same privileges and immunities subject to corresponding conditions and obligations, as it accords to diplomatic envoys* accredited to it. (Headquarters Agreement, Article V, Section 15 (emphasis supplied).

Both the United States and the United Nations agree that permanent representatives and ministers of foreign nations to the United Nations are entitled to full diplomatic immunity, that is, the immunities codified in the Vienna Convention. *See* 1983 *United Nations Juridical Yearbook* at 222; 1986 *United Nations Juridical Yearbook* at 327; 1976 *United Nations Juridical Yearbook* at 224-29. *See also* 767 *Third Ave. Assoc. v. Permanent Mission of Republic of Zaire to United Nations,* 988 F.2d 295, 301-02 (2d Cir.1993); H. Rep. No. 1093, 80th Cong., 1st Sess., at 11-12 (1947) ("the Charter itself... does not specify diplomatic status. It simply states the requirement of such immunity as is necessary for the performance of the function. The United States and the United Nations have come into an agreement that diplomatic status is the necessary formula here."). The Supreme Court has made clear: "*When the parties to a treaty both agree to the meaning of a treaty provision, and that interpretation follows from the clear treaty language[ the court] must, absent extraordinarily strong contradictory evidence, defer to that interpretation. Sumitomo Shoji Am., Inc. V. Avagliano,* 457 U.S. 176, 102 S. Ct.2374, 72 L. Ed.2d 765 (1982).

Similarly, courts have consistently held that representatives of member states to the United Nations, specifically individuals enumerated in Section 15 of the Headquarters Agreement, are entitled to the same level of diplomatic immunity that the United States extends to accredited

16

diplomatic envoys, and are not limited to functional immunity. *See Kadic v. Karadzic*, 70 F.3d 232, 247 (2d Cir.1995); *767 Third Ave. Assoc.,* 988 F.2d at 298;*Firemen's Ins. Co. of Washington D.C. v. Onwualia,* No. 94 Civ. 0095(PKL), 1994 WL 706994, at *2 (S.D.N.Y. Dec. 19.1994); *Fitzpatrick,* 214 F.Supp. at 434-35;*see also*S.Rep. No. 95-958, 95th Cong., 2d Sess., at 3, *reprinted at* 1978 U.S.C.C.A.N.1935, 1935-36 (1978) (report accompanying the Diplomatic Relations Act which incorporated the Vienna Convention); H. Rep. No. 1093, 80th Cong., 1st Sess, at 11 (1947)

The scope of immunity extended to diplomatic envoys, and accordingly the scope of immunity to be extended to United Nations representatives, is that set out in the Vienna Convention, which is broadly understood as having "codified longstanding principles of customary international law with respect to diplomatic relations." *767 Third Av. Assoc.,* 988 F.2d at 300;*see also**U.S. v. Enger,* 472 F.Supp. 490, 505 (D.N.J.1978). This is true even though the Vienna Convention took effect after the Headquarters Agreement *Tachiona v. Mugabe*  169 F.Supp.2d 259, 297 (S.D.N.Y.2001); *Foxworth v. Permanent Mission of Republic of Uganda to United* Nations, 796 F. Supp. 761, 763 (S.D.N.Y. 1992). (Ahmed v. Hoque, supra,6).

Those courts that have discussed the level of immunity accorded to those working at the United Nations have distinguished between United Nations representatives or ministers and United Nations staff members or employees, noting that only representatives and ministers are accorded full diplomatic immunity, while staff members and employees are accorded only functional immunity. *See**Enger,* 472 F.Supp. at 502;*U.S. v. Egorov,* 222 F.Supp. 106, 108 (S.D.N.Y.1963); *Fitzpatrick,* 214 F.Supp. at 436;*U.S. v. Melekh,* 190 F.Supp. 67, 81 (S.D.N.Y.1960); *see also**Tachiona,* 169 F.Supp.2d at 298 (distinguishing between temporary and resident representatives). Thus, under the

17

Headquarters Agreement, individuals such as defendants are entitled to full diplomatic immunity while employees are entitled only to functional immunity or immunity while acting within the scope of their employment.

For all the foregoing reasons, defendants submit that defendants Lauro Baja, Jr., Norma Baja and Maria Elizabeth Baja are entitled to immunity from the civil jurisdiction of this Court and therefore this action should be dismissed under 22 U.S.C. § 254 (d) which states that "any action or proceeding brought against an individual who is entitled to immunity with respect to such an action or proceeding under the Vienna Convention on Diplomatic Relations.....shall be dismissed.

There remains the sole issue of the complaint surviving as to defendant Labaire International Travel, Inc.

None of any of the causes of action would survive if Labaire is the only remaining defendant. We submit that a dismissal in favor of the remaining defendant Labaire International Travel, Inc. is also appropriate under the doctrine of "derivative immunity", as held by the Fourth Circuit in the case of *Butters v. Vance International, Inc.*, 225 F.3d 462 (4th Cir. 2000).

Accordingly, defendant Bajas motion to quash service and dismiss the complaint should be granted. And in so far as none of the causes of action would survive against Labaire, it is also requested that the complaint be dismissed.

Dated: New York, New York

July 15, 2008

PRADO & TUY, LLP
Attorneys for Defendants
11 Hanover Square, 26th Floor

18

New York, NY 10005
(212) 668 8888
By:

SALVADOR E. TUY, JR. (ST1130)

Exhibit A

Home | About Us | The Philippines and the United Nations | Statements | Mission News | The Philippines at a Glance | Links

**H.E. LAURO LIBOON BAJA, JR.**
*Ambassador Extraordinary & Plenipotentiary*
*Permanent Representative Philippine Mission to the United Nations*

**> Permanent Representative**

**> back to Security Council**

AMBASSADOR LAURO LIBOON BAJA JR. is one of the most senior and respected diplomats of the Philippines, with more than 40 years of diplomatic experience that includes a previous assignment in the United Nations.

Born in Alangilan, Batangas, on 2 May 1937, Ambassador Baja studied in the Philippines and in England. He holds degrees in jurisprudence and law from the University of the Philippines in Manila. He also took a Foreign Service Course at the Oxford University.

Ambassador Baja began his career in the Department of Foreign Affairs in Manila in 1962 as Legal Officer of the Office of Legal Affairs (OLA) and later as Legal Officer of the Office of Undersecretary for Administration (OUA). He also became the Chief of the Treaties Division of the OLA.

His first foreign assignment was in London where he served as Third Secretary and later Second Secretary at the Philippine Embassy from 1967 to 1972. He then served as First Secretary and later as Career Minister at the Philippine Mission to the UN in New York from 1973 to 1976.

Upon his return to the Philippines, Ambassador Baja served as Executive Director of the Office of United Nations and Other International Organizations (UNIO) from 1977 to 1979 and Chief Coordinator and Special Assistant to the Secretary of Foreign Affairs (OSEC) from 1980 to 1985.

In 1986, President Corazon Aquino named him Philippine Ambassador to Brazil. He served at the Philippine Embassy in Brasilia from 1986 to 1993. At the end of his term, he was awarded the Ordem de Gran Cruz de Rio Branco (Order of the Grand Cross of Rio Branco) by the Brazilian Government.

Ambassador Baja returned to Manila in 1993 and was named Assistant Secretary for Asian and Pacific Affairs (ASPAC)—a position he held until 1997 when President Fidel Ramos named him Philippine Ambassador to Italy. In Rome, he received another decoration—the Ufficiale nell Ordine' Al Merito Republica Italiana (Official Order of Merit) from the Italian government.
In 1998, Ambassador Baja was appointed Senior Undersecretary for Foreign Affairs in charge of policy, the second highest position at the Department of Foreign Affairs.

Ambassador Baja's many accomplishments during his term as Senior Undersecretary include the Joint Statement on Cooperation for the 21st Century which he drafted and successfully negotiated with China and Vietnam; the ASEAN Joint Declaration Against Terrorism in the 2000 ASEAN Summit; the Trilateral Agreement among the Philippines, Indonesia and Malaysia on the Exchange of Information and Establishment of Communications Procedure to Combat Terrorism; and the 2002 Declaration on the Conduct of Parties in the South China Sea.

Ambassador Baja is also credited with initiating and establishing Foreign Ministry Consultations with Portugal, Spain, France, Switzerland, Poland, Hungary, Romania, Pakistan, Egypt and Iran.

He also represented the Philippines in various meetings and conferences of the United Nations and other international and regional organizations as head or member of the Philippine delegation.

In recognition of his accomplishments, President Gloria Macapagal Arroyo conferred on Ambassador Baja the Order of Sikatuna with the rank of Datu, the highest award a member of the Philippine Foreign Service could receive. In 1999, he received the Gawad Mabini Award with the rank of Dakilang Kamanong from President Joseph Estrada.

Because of his vast diplomatic experience, Ambassador Baja was chosen by President Arroyo to represent the Philippines in the UN and oversee Manila's participation as a non-permanent member of the Security Council beginning 2004.

Shortly after he assumed his post as Permanent Representative, Ambassador Baja was

elected chairman of the Sixth (Legal) Committee of the 58th UN General Assembly.

Ambassador Baja led the Philippine Delegation in a historic two-year membership in the Security Council where he ably articulated Philippine positions on various issues brought before the most powerful organ of the United Nations. He served as president of the Security Council, first in June 2004 and again in September 2005.

He was also responsible for the historic Security Council Summit in September 2005--the third in the history of the United Nations--which was chaired by President Arroyo, who became the first Filipino, the first Asian and the first female head of state to preside over a gathering of the most powerful leaders of the world, including President Georige Bush of the United States and President Vladimir Putin of the Russian Federation.

During the Philippine membership in the Security Counci, Ambassador Baja held two committee chairmanships and three committee vice chairmanships. He chaired the 1566 committee that seeks to impose sanctions on individuals and entities involved in terrorist activities and the sanctions committee overseeing the arms embargo against Somalia. He was also vice chairman of four other subsidiary bodies of the Security Council – the 1540 committee that seeks to prevent terrorists from acquiring and using weapons of mass destruction and the sanctions committees on Liberia and the Democratic Republic of Congo. He also sat as vice chairman said the 1591 Committee tasked to monitor the implementation of the arms embargo, travel ban and assets freeze against Sudan.

United Nations Secretary General Kofi Annan and other member-states have acknowledged Ambassador Baja's constructive role in the work of the Security Council during the Philippine's highly acclaimed two year term.

In recognition of his achievements, the Philippine Jaycees Senate named Ambassador Baja the Outstanding Filipino (TOFIL) Awardee for his outstanding work in the field of bilateral and multilateral diplomacy. He was also recently recognized by the NGO Group in the Security Council for his contribution to international peace and security and for enabling for the first time civil society and NGOs to participate in formal meetings of the Security Council.

Ambassador Baja is married to the former Norma Castro. They are blessed with two children—Maria Elizabeth and Lauro III.

*Philippine Center Building | 556 5th Avenue*
*New York, NY 10036 | (Between 45th and 46th)*
*Tel:(212)764-1300 | Fax:(212)840-8602 | E-mail: misunphil@aol.com*

Web   Images   Maps   News   Shopping   Gmail   more ▼

Sign in

Google

| lauro baja | Search | Advanced Search |
| | | Preferences |

**Web**

Results **1** - **10** of about **539,000** for **lauro baja**. (**0.06** seconds)

### Permanent Mission of the Republic of the Philippines to the United ...
AMBASSADOR **LAURO** LIBOON **BAJA** JR. is one of the most senior and respected
diplomats of the Philippines, with more than 40 years of diplomatic experience that ...
www.un.int/philippines/about/baja_bio.html - 13k - Cached - Similar pages

### Lauro L. Baja, Jr. - Wikipedia, the free encyclopedia
**Lauro** L. **Baja**, Jr. was the Permanent Representative to the United Nations for the Republic
of the Philippines, and a former Undersecretary of Foreign ...
en.wikipedia.org/wiki/Lauro_L._Baja,_Jr. - 20k - Cached - Similar pages

### Lauro Baja and The 'Other' DFA « At Midfield
Jul 7, 2008 ... It is also no surprise that the eminent ambassador **Lauro Baja**, with his wife
touting his "imblemished" record on the foreign service, ...
midfield.wordpress.com/2008/07/07/lauro-baja-and-the-other-dfa/ - 31k -
Cached - Similar pages

### Profile of Ambassador Lauro L. Baja of the Philippines - UN ...
Outstanding Ambassador of the Year, 1991, Brasilia. Family Background Wife Norma **Baja**
Daughter Maria Elizabeth **Baja** Facundo Son **Lauro Baja** III ...
www.globalpolicy.org/security/membship/profiles/philippines.htm - 13k -
Cached - Similar pages

### LAURO LIBOON BAJA (PHILIPPINES) CHAIRMAN OF SIXTH (LEGAL) COMMITTEE
**Lauro** Liboon **Baja** Jr. (Philippines) was elected Chairman of the Sixth Committee (Legal) by
the General Assembly on 6 June. Mr. **Baja** is the Permanent ...
www.un.org/News/Press/docs/2003/bio3528.doc.htm - 6k - Cached - Similar pages

### Ambassador Lauro Baja — Blogs, Pictures, and more on WordPress
Find other items tagged with "ambassador-**lauro-baja**":. Technorati Del.icio.us IceRocket ·
Terms of Service · Privacy · Support · Stats ...
wordpress.com/tag/ambassador-lauro-baja/ - 11k - Cached - Similar pages

### Lauro Baja - Zimbio Search
**Lauro Baja** is the Ambassador to the United Nations for Philippines. 2. **Baja** California. All
about **Baja** Norte. Great, fun things to do see and experience in ...
www.zimbio.com/search?q=Lauro+Baja - 22k - Cached - Similar pages

### Lauro Baja - UPI.com
Bookmark this Page. You are here: Home / **Lauro Baja**. Topic: **Lauro Baja**. **Lauro Baja** is
the subject or is mentioned in the following stories: ...
www.upi.com/topic/Lauro_Baja/ - 18k - Cached - Similar pages

### First Filipino: Lauro L. Baja Jr.
**Lauro** L. **Baja** Jr. **Lauro Baja** Jr. AKA **Lauro** Liboon **Baja** Jr. 1st Filipino to chair the United
Nations Committee of the Parliamentarians for Global Action (PGA ...
firstfilipino.blogspot.com/2005/05/lauro-l-baja-jr.html - 207k - Cached - Similar pages

### Former Philippine ambassador to the United Nations Lauro Baja ...
Former Philippine ambassador to the United Nations **Lauro Baja** ... on Yahoo! News Photos.

news.yahoo.com/.../s:/afp/20080711/wl_asia_afp/
philippinesusjusticediplomatlabour_080711084315 - 25k - 4 hours ago -
Cached - Similar pages

1 2 3 4 5 6 7 8 9 10    **Next**

| lauro baja | Search |

Search within results | Language Tools | Search Tips | Dissatisfied? Help us improve | Try Google Experimental

Google Home - Advertising Programs - Business Solutions - Privacy - About Google

EXHIBIT C

*Make a donation to Wikipedia and give the gift of knowledge!*

# Lauro L. Baja, Jr.

From Wikipedia, the free encyclopedia

**Lauro L. Baja, Jr.** was the Permanent Representative to the United Nations for the Republic of the Philippines, and a former Undersecretary of Foreign Affairs. He presented his credentials to the Secretary-General of the United Nations on 21 May 2003, replacing former Ambassador Alfonso T. Yuchengco. He was replaced by former Chief Justice Hilario Davide in 2006.

He is a former president of the United Nations Security Council, where he took the chair for one month in 2004. He was also the Chair of the United Nations Committee for Parlimentarians for Global Action in 2004.

Baja attended the University of the Philippines, where he was a member of the Alpha Phi Beta Fraternity - UP College of Law.

## External links

- Permanent Mission of the Republic of the Philippines to the United Nations (http://www.un.int/philippines)
- List of Alpha Phi Beta alumni (http://up.alphaphibeta.org/with_distinction1.html)
- Parliamentarians for Global Action (http://www.pgaction.org/about_whos_un.asp)

## See also

- Philippine Center
- Rafael M. Salas

| Diplomatic posts | | |
|---|---|---|
| Preceded by<br>**Alfonso T. Yuchengco** | **Philippine Permanent Representative to the United Nations**<br>2003 – 2006 | Succeeded by<br>**Hilario Davide, Jr.** |

Retrieved from "http://en.wikipedia.org/wiki/Lauro_L._Baja%2C_Jr."

Categories: Filipino politician stubs | United Nations biography stubs | Ambassadors to the United Nations | Filipino politicians | Living people | University of the Philippines alumni

- This page was last modified on 4 May 2008, at 13:05.
- All text is available under the terms of the GNU Free Documentation License. (See **Copyrights** for details.)
  Wikipedia® is a registered trademark of the Wikimedia Foundation, Inc., a U.S. registered 501(c)(3) tax-deductible nonprofit charity.

## CERTIFICATE OF SERVICE

I, Anna L. Olona, hereby certify that on July 15, 2008, I caused to be served via e-mail a true and correct copy of the foregoing Defendants' Motion to Quash Service of Summons and Dismiss Complaint on the following:

Aaron Hirsch Mendelsohn, Esq.
Troutman Sanders LLP (NYC)
405 Lexington Avenue
New York, New York 10174

ANNA L. OLONA

## CERTIFICATE OF SERVICE

I, Anna L. Olona, hereby certify that on July 15, 2008, I caused to be served via e-mail a true and correct copy of the foregoing Defendants' Motion to Quash Service of Summons and Dismiss Complaint on the following:

Ivy Oracion Suriyopas
Asian American Legal Defense
99 Hudson Street
New York, New York 11355

_____
ANNA L. OLONA