UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MARICHU SUAREZ BAOANAN,

               Plaintiff,

   v.

LAURO LIBOON BAJA, JR., NORMA
CASTRO BAJA, MARIA ELIZABETH BAJA
FACUNDO, and LABAIRE INTERNATIONAL
TRAVEL, INC.,

               Defendants.

Case No. 08-CV-5692 (VM)

**PLAINTIFF'S REPLY MEMORANDUM
IN SUPPORT OF THE COURT'S JURISDICTION OVER
DEFENDANTS LAURO AND NORMA BAJA**

**TABLE OF CONTENTS**

PAGE

PRELIMINARY STATEMENT ........................................................................................................1

ARGUMENT....................................................................................................................................2

I.   THE COURT SHOULD HOLD AN EVIDENTIARY TO RESOLVE THE FACTUAL ISSUES RELATED TO THE COURT'S JURISDICTION................................................2

II.  THE BAJA DEFENDANTS' VARIOUS FACTUAL ASSERTIONS AND ARGUMENTS ARE UNAVAILING TO SHOW THAT DEFENDANTS DID NOT ENGAGE IN THE COMMERCIAL ACTIVITY ALLEGED BY PLAINTIFF................4

   A. Baja Defendants Engaged in "Commercial Activity" Beyond the Mere "Hiring" and "Employment" of Plaintiff..............................................................................................4

   B. Baja Defendants Engaged in Activity for Personal Profit Outside Defendant Lauro Baja's Official Functions in the United States................................................................6

III. BAJA DEFENDANTS ARE NOT IMMUNE FROM SERVICE OF PROCESS; DEFENDANT LAURO BAJA'S RETIREMENT FROM HIS POSITION AS PERMANENT REPRESENTATIVE TO THE UNITED NATIONS GIVES THE COURT JURISDICTION OVER BAJA DEFENDANTS FOR ACTIONS OUTSIDE THE EXERCISE OF HIS OFFICIAL FUNCTIONS......................................................8

CONCLUSION..................................................................................................................................9

# **TABLE OF AUTHORITIES**

CASES                                                                                                                         PAGE

*Aidi v. Yaron*, 672 F. Supp. 516 (D.D.C. 1987)..............................................................................8

*Brzak v. United Nations*, 551 F. Supp. 2d 313 (S.D.N.Y. 2008) ....................................................8

*Leighton Techs. LLC v. Oberthur Card Sys., S.A.,* 531 F. Supp. 2d 591 (S.D.N.Y. 2008) .............2

*Paredes v. Vila*, 479 F. Supp. 2d 187 (D.D.C. 2007). ............................................................. 4-5, 8

*Tabion v. Mufti*, 73 F.3d 535 (4th Cir. 1996)...............................................................................4, 6

*Tachiona v. U.S.*, 386 F.3d 205 (2d Cir. 2004)................................................................................7

*Tasini v. New York Times Co.*, 184 F. Supp. 2d 350 (S.D.N.Y. 2002)............................................3


STATUTES

Fed. R. Civ. P. 12(b)(1)....................................................................................................................2

Vienna Convention on Diplomatic Relations, Apr. 18, 1961, 23 U.S.T. 3227, T.I.A.S. 7502.passim

**PRELIMINARY STATEMENT**

Plaintiff Marichu Suarez Baoanan ("Ms. Baoanan" or "Plaintiff") filed a Complaint with the Court against Lauro Liboon Baja, Jr., Norma Castro Baja, Maria Elizabeth Baja Facundo, and Labaire International Travel., Inc. ("Defendants") on June 24, 2008, alleging, *inter alia*, that Defendants trafficked and enslaved Plaintiff in the United States. Pursuant to the Court's direction, Plaintiff filed a memorandum of law ("Plaintiff's Memorandum") in support of the Court's exercise of jurisdiction over Lauro and Norma Baja ("Baja Defendants") on October 14, 2008,[1] and Baja Defendants filed a response ("Baja Defendants' Response") on October 28, 2008.

As is more fully stated below, Baja Defendants' Response makes it clear that an evidentiary hearing must be held in order to resolve the issue of diplomatic immunity. Defendants have not challenged the sufficiency of Plaintiffs' allegations in her Complaint that Baja Defendants' have engaged in "commercial activity." Rather, Defendants have argued that Plaintiffs' allegations are not true. Thus, an evidentiary hearing is necessary to determine whether the factual allegations in support of "commercial activity" are true. Because the facts required to be determined almost fully overlap with the merits of Plaintiff's Complaint, Plaintiff recommends that the Court meet with the parties to prepare a Case Management Plan to expeditiously resolve Plaintiffs' claims. Or, alternatively, if the Court believes that the facts necessary to determine "commercial activity" are sufficiently discrete, Plaintiff recommends that the Court prepare a schedule for discovery and hold an evidentiary hearing to resolve only those facts.

---

[1] With the Court's permission, the American Civil Liberties Union ("ACLU") and <u>amici curaie</u> also filed a memorandum of law in support of Plaintiff's Memorandum ("Amici Memorandum") on October 14, 2008.

1

**ARGUMENT**

I.  **THE COURT SHOULD HOLD AN EVIDENTIARY TO RESOLVE THE FACTUAL ISSUES RELATED TO THE COURT'S JURISDICTION.**

Baja Defendants have styled their response in the form of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1).  *See* Baja Defs.' Resp., ii, 3-4.  It is well-established that "[a]ttacks on subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) come in two forms: facial attacks, which challenge the sufficiency of the allegations, and factual attacks, which challenge the existence of the subject matter jurisdiction in fact, irrespective of the pleadings."  *Leighton Techs. LLC v. Oberthur Card Sys., S.A.,* 531 F. Supp. 2d 591, 594 (S.D.N.Y. 2008) (citations omitted).  "[W]here the relevant facts are dispositive of both the 12(b)(1) motion and portions of the merits, the trial court should grant the motion to dismiss only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.  *Id.* at 595 (citations omitted).

In the case at bar, it is apparent from the headings in Baja Defendants' Response (i.e., "Plaintiff is not a Nurse;" "Defendants Did Not Demand and Collect Any Employment Agency Fee from Plaintiff;" "Plaintiff Lies about her Association with Juana Maglalang") that Baja Defendants are challenging the existence of the facts necessary for this Court to exercise jurisdiction over the Baja Defendants.  *See* Baja Defs.' Resp., ii.  Baja Defendants do not argue that, accepting all of the allegations in the Complaint as true, subject matter jurisdiction is wanting.  Rather, Baja Defendants take issue with the allegations themselves, arguing that Plaintiff is lying and that Baja Defendants did not demand or collect any money from her.  Consequently, as the Baja Defendants have themselves recognized, *see* Baja Defs.' Resp., 3-4, "the court is permitted to refer to evidence extrinsic to the pleadings . . . [and] may decide the

2

motion on the basis of affidavits or it may conduct an evidentiary hearing." *Tasini v. New York Times Co.*, 184 F. Supp. 2d 350, 354 (S.D.N.Y. 2002) (citations omitted).

The issues of fact are manifest. Baja Defendants, for instance, argue that the "underlying transaction [was] intended to make plaintiff work for the Bajas," Baja Defs.' Resp., 15, while Plaintiff contends that the underlying transaction was her agreement with Defendant Norma Baja to facilitate her move to, and employment in, the U.S. as a nurse. Why would Plaintiff pay Defendant Labaire 200,000 pesos (approximately $4,000) and Defendant Norma Baja 50,000 pesos (approximately $1,000) to work for free as a domestic worker for Baja Defendants and Defendant Facundo?[2] *See* Pl.'s Mem., 2; Compl., ¶ 18. Discovery and an evidentiary hearing is needed to resolve these issues of fact.

An evidentiary hearing will be necessary "to satisfy the Court, as fact-finder, of the jurisdictional facts." *Tasini*, 184 F. Supp. 2d at 353. The showing of commercial activity involves both the beginning of the relationship between the parties in the Philippines and the actions of the parties while Plaintiff was in the U.S. As such, Plaintiff believes that these jurisdictional facts overlap almost completely with all of Plaintiffs' claims. It is not possible to isolate the facts surrounding Plaintiffs' showing of "commercial activity" and the other facts in the Complaint. Wherefore, Plaintiff respectfully suggests that Defendants answer the Complaint and that discovery on the merits begin.

---

[2] Notwithstanding the assertion that Defendant Facundo has been an employee of the United Nations since September 27, 2004, Baja Defs.' Resp., Exhibit C, the Court has jurisdiction over her. In fact, Defendants conceded this issue as to both Defendants Facundo and Labaire at the September 19, 2008 pre-motion conference and withdrew their motion to dismiss as to Defendant Facundo.

3

**II.    THE BAJA DEFENDANTS' VARIOUS FACTUAL ASSERTIONS AND ARGUMENTS ARE UNAVAILING TO SHOW THAT DEFENDANTS DID NOT ENGAGE IN THE COMMERCIAL ACTIVITY ALLEGED BY PLAINTIFF.**

The Vienna Convention on Diplomatic Relations ("V.C.D.R.") provides diplomatic immunity from the receiving country's civil jurisdiction for diplomatic agents,[3] except, *inter alia*, in the case of "an action relating to any professional or commercial activity exercised by the diplomatic agent in the receiving State outside his official functions."  Art. 31(1)(c), Apr. 18, 1961, 23 U.S.T. 3227, T.I.A.S. 7502.  Plaintiff came to the U.S. to be a nurse.  Baja Defendants, however, engaged in commercial activity in violation of the V.C.D.R. by collecting 250,000 pesos from Plaintiff (about $5,000) and collecting an additional 250,000 pesos from Plaintiff through coerced labor and services as their domestic worker in the U.S.  While such commercial activity began in the Philippines, it continued in the U.S. with Baja Defendants extracting more than 250,000 pesos in actual, unpaid wages as calculated under federal and state minimum wage laws.

**A. Baja Defendants Engaged in "Commercial Activity" Beyond the Mere "Hiring" and "Employment" of Plaintiff.**

Baja Defendants argue that the hiring of a domestic helper or household employee by a diplomat does not fall within the commercial activity exception of the V.C.D.R.  Baja Defs.' Resp., 13-14.  However, Baja Defendants' reliance on such cases as *Tabion v. Mufti* is misplaced.  73 F.3d 535, 539 (4th Cir. 1996) (holding that defendant diplomat was immune from plaintiff domestic worker's claims).  As explained in Plaintiff's Memorandum, Plaintiff does not argue that Baja Defendants' "employment" in the U.S. alone was itself "commercial activity."  Pl.'s Mem., 6-7.  Baja Defendants engaged in activity beyond merely entering "contractual relationships for goods and services incidental to the daily life of the diplomat and family in the

---

[3] The family members of "a diplomatic agent forming part of his household shall, if they are not nationals of the receiving State, enjoy the privileges and immunities specified in Articles 29-36."  V.C.D.R., art. 37.

4

receiving State." *Tabion*, 73 F.3d at 538; *see* Pl.'s Mem., 7.  The plaintiff in *Tabion* came to the U.S. with the purpose of being a domestic worker, while Plaintiff in the case at bar came to the U.S., and paid to come to the U.S., to be a nurse.

*Paredes v. Vila* is also distinguishable from the case at bar.[4]  In *Paredes*, the defendants specifically hired the plaintiff to be their domestic worker while the defendant diplomat's wife pursued her legal education.  479 F. Supp. 2d 187, 189 (D.D.C. 2007).  The plaintiff domestic worker argued that her assistance facilitated defendant Nielsen in pursuing her studies and that such action was related to commercial activity as contemplated by the V.C.D.R.  *Paredes*, 479 F. Supp. 2d at 194.  Here, in contrast to the plaintiff in *Paredes*, Plaintiff is not arguing that a contract for domestic services is itself "commercial activity."  Nor does Plaintiff contend that Baja Defendants were engaged in academic studies for the purpose of meeting the definition of "commercial activity."[5]

Rather, Plaintiff maintains that Baja Defendants were engaged in actual commercial, for-profit activity at all stages of their relationship with Plaintiff.  For example, not only did Baja Defendants collect free labor and services from Plaintiff through coercion but they also collected 250,000 pesos in three separate installments from Plaintiff.

Moreover, despite Baja Defendants contention that Plaintiff did not state "what commercial activities defendant Norma Baja did in New York either in her personal capacity or as president of Labaire Philippines aside from being the ambassador's wife," Baja Defs.' Resp.,

---

[4] Baja Defendants refer to this case as "*Gonzalez v. Vila*."  Baja Defs.' Resp., 14.
[5] Baja Defendants misstate Plaintiff's position vis-à-vis the V.C.D.R.  Unlike the plaintiff in *Paredes*, here Plaintiff is not arguing that fraud is an exception to the V.C.D.R.  Rather, as noted above, Plaintiff contends that a) payment of an employment agency fee of 250,000 pesos to Defendant Norma Baja and Defendant Labaire and b) the subsequent debt of an additional 250,000 pesos Baja Defendants and Defendant Maria Facundo imposed on Plaintiff falls within the commercial activity exception to the V.C.D.R.  Plaintiff's allegations of fraud, on the other hand, are part of trafficking claims in violation of the Trafficking Victims Protect Reauthorization Act, the Alien Tort Claims Act, and common law claims.

17, the factual allegations in the Complaint describe Defendant Norma Baja's actions, both in her personal capacity and in her position as president of Defendant Labaire, of making an agreement with Plaintiff to provide her with travel to the U.S., a visa, work authorization, and job placement assistance as a nurse in exchange for 250,000 pesos. Compl., ¶¶ 17, 18. Moreover, Defendant Norma Baja's collection of an additional alleged debt of 250,000 pesos from Plaintiff upon her arrival in the U.S. was also commercial activity, engaged in for personal financial gain in the U.S. Compl., ¶ 32.

Similarly, Defendant Lauro Baja's action in the U.S. constitutes commercial activity and deprives him of immunity. *See* Pl.'s Mem., 7-8. He used his status and position as permanent representative to the U.N. to obtain Plaintiff's visa, work authorization, and travel documents to bring her to the U.S. *Id.*; *see* Compl., ¶ 27. Moreover, in violation of the V.C.D.R., he personally profited from the collection of fees and coerced labor and services towards the satisfaction of Plaintiff's alleged debt.

### B. Baja Defendants Engaged in Activity for Personal Profit Outside Defendant Lauro Baja's Official Functions in the United States.

Baja Defendants fail to provide any legal support for their assertion that commercial activity must involve more than a "singular act." Baja Defs.' Resp., 16. They misquote and misinterpret *Tabion* by stating that Plaintiff failed to show that Baja Defendants were "'in other similar transactions in trade or business activity engaged in for personal profits [sic]' (as in *Tabion*) in the receiving State as a day to day occupation, trade or business." Baja Defs.' Resp., 17. Rather, the *Tabion* court stated: "When examined in context, the term 'commercial activity' does not have so broad a meaning as to include occasional service contracts as Tabion contends, but rather relates only to trade or business activity engaged in for personal profit." *Tabion*, 73 F.3d at 537. In contrast to Baja Defendants' interpretation, there is no requirement that Plaintiff

6

demonstrate that Defendants were involved in more than one act or were engaged in day-to-day occupation, trade, or business. The emphasis is on "activity engaged in *for personal profit*," and it must be "*outside his official functions*." *Tabion*, 73 F.3d at 537 (emphasis added). Plaintiff is not claiming that the written employment contract constitutes commercial activity. Instead, the commercial activity of which Plaintiff complains directly relates to Baja Defendants' collection of fees through employment agency fees and coerced labor and services – the type of business activity engaged in for personal profit contemplated in the V.C.D.R. Defendants gained financially from this activity, and such activity was outside Defendant Lauro Baja's official functions as a representative to the U.N.

Baja Defendants' commercial activities occurred in the U.S., the receiving state. Plaintiff explained these actions in detail. Pl.'s Mem., 8-10. In contrast to the facts of *Tachiona v. U.S.*, Baja Defendants' actions in the Philippines foresaw the collection of the remaining balance of 250,000 pesos from Plaintiff in the U.S. Pl.'s Mem., 9; *see Tachiona v. U.S.*, 386 F.3d 205 (2d Cir. 2004).[6]

---

[6] Likewise, the availability of the Philippines as "forum conveniens" for the parties in this suit is immaterial to the legal issue of whether Baja Defendants are subject to the jurisdiction of this Court. Baja Defendants committed the actions on which Plaintiff bases her claims in the U.S. Moreover, Plaintiff filed the Complaint against Labaire International Travel, Inc. and attempted to serve both the office in the Philippines ("Labaire Philippines") and the one listed in New York ("Labaire New York"). Baja Defendants argue that because Labaire Philippines is a distinct and independent entity from Labaire New York, Baja Defs.' Resp., 16, Plaintiff's contention that Baja Defendants engaged in commercial activity must fail. Indeed, as noted above, Baja Defendants' actions in the U.S. alone are enough to meet the definition of commercial activity as contemplated by the V.C.D.R.

**III.   BAJA DEFENDANTS ARE NOT IMMUNE FROM SERVICE OF PROCESS; DEFENDANT LAURO BAJA'S RETIREMENT FROM HIS POSITION AS PERMANENT REPRESENTATIVE TO THE UNITED NATIONS GIVES THE COURT JURISDICTION OVER BAJA DEFENDANTS FOR ACTIONS OUTSIDE THE EXERCISE OF HIS OFFICIAL FUNCTIONS.**

Baja Defendants assert that they are still entitled to immunity from service even though Defendant Lauro Baja has retired from his position as permanent representative to the U.N. Baja Defs.' Resp., 19. However, *Brzak v. United Nations* makes it abundantly clear that, under the V.C.D.R., diplomatic officials sued after leaving office continue to enjoy immunity only "with respect to acts performed . . . *in the exercise of [their] functions*." 551 F. Supp. 2d 313, 319 (S.D.N.Y. 2008) (emphasis added). Here, Plaintiff contends that Defendant Lauro Baja's acts were outside the exercise of his functions and, consequently, he is not entitled to continued immunity from service after retiring from office. *See* Pl.'s Mem., 10.

Moreover, contrary to Baja Defendants' contention, both *Brzak* and *Aidi v. Yaron* are distinguishable from the case at bar because the plaintiffs in those cases did not assert any of the exceptions to the V.C.D.R. In addition, in *Brzak*, the claims involved, *inter alia*, Title VII which were connected solely with the plaintiffs' employment, 551 F. Supp. 2d at 315, while in *Aidi*, the suit was filed while the defendant was still serving as a diplomat. 672 F. Supp. 516 (D.D.C. 1987); *see* Pl.'s Mem., 10. Here, not only did Plaintiff serve Defendants after Defendant Lauro Baja retired from his position as representative to the U.N., but her claims also involve commercial activity in violation of the V.C.D.R.

Furthermore, Baja Defendants' reliance on *Paredes* actually supports Plaintiff's contention that they are subject to service. 479 F. Supp. 2d 187 (D.D.C. 2007). There, the court granted defendants' motion to dismiss "without prejudice to the claims being re-filed if and when the defendants are no longer diplomatically immune from suit." *Paredes*, 479 F. Supp. 2d at

8

189. The court stated in dicta that it "recommends that the statute of limitations on plaintiff's claim be tolled until such time as the defendants are not immune from suit." *Paredes*, 479 F. Supp. 2d at 189 n.2. In the instant case, Plaintiff filed the Complaint well after Defendant Lauro Baja's retirement, at such time as he is not immune from suit.[7] The issue of jurisdiction does not bear on the effectiveness of service on Baja Defendants.

## CONCLUSION

For the reasons stated above and in Plaintiff's Memorandum in Support of the Court's Jurisdiction over Defendants' Lauro and Norma Baja, Plaintiff respectfully recommends that the Court meet with the parties to prepare a Case Management Plan to expeditiously resolve Plaintiffs' claims. Or, alternatively, if the Court believes that the facts necessary to determine "commercial activity" are sufficiently discrete, Plaintiff recommends that the Court prepare a schedule for discovery and hold an evidentiary hearing to resolve only those facts.

---

[7] Notably, on July 14, 2008, Defendants' New York-based counsel stipulated to accepting service on behalf of Baja Defendants. *See* 08-CV-5692, Docket No. 8.

9

Dated: November 7, 2008
      New York, NY


| | |
|---|---|
|   /s/ Aaron Mendelsohn      |    /s/ Ivy O. Suriyopas       |
| Aaron Mendelsohn | Ivy O. Suriyopas |
| TROUTMAN SANDERS | ASIAN AMERICAN LEGAL DEFENSE |
| The Chrysler Building | AND EDUCATION FUND |
| 405 Lexington Avenue | 99 Hudson Street, 12th Floor |
| New York, NY 10174 | New York, New York 10013 |
| (212) 704-6158 | 212-966-5932 x235 |
| | |
| Attorney for Plaintiff | Attorney for Plaintiff |

To:    Salvador E. Tuy
        Prado & Tuy, LLP
        11 Hanover Sq Fl 3
        New York, NY 10005-2871
        (212) 668-8888
        (212) 668-8494 (fax)

        Attorney for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on November 7, 2008, I electronically filed Plaintiff's Reply Memorandum in Support if the Court's Jurisdiction Over Defendants Lauro and Norma Baja with the clerk of the Court by way of the CM/ECF system, which will send a notice of electronic filing to the following:

Aaron Mendelsohn
Troutman Sanders, LLP, Attorney for Plaintiff
Aaron.Mendelsohn@troutmansanders.com

Salvador E. Tuy
Prado & Tuy, LLP, Attorney for Defendants
setlaw@att.net

　　　　　　　　　　　　　　　　　　　　　　　____/s/ Ivy O. Suriyopas_____
　　　　　　　　　　　　　　　　　　　　　　　Ivy O. Suriyopas
　　　　　　　　　　　　　　　　　　　　　　　ASIAN AMERICAN LEGAL DEFENSE
　　　　　　　　　　　　　　　　　　　　　　　AND EDUCATION FUND
　　　　　　　　　　　　　　　　　　　　　　　99 Hudson Street, 12th Floor
　　　　　　　　　　　　　　　　　　　　　　　New York, New York 10013
　　　　　　　　　　　　　　　　　　　　　　　212-966-5932 x235